1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8
9  MIGUEL GARCIA NUNEZ,                      1:10-cv-00524-DLB (HC)

10                      Petitioner,          ORDER DENYING PETITION FOR WRIT OF
                                             HABEAS CORPUS, DIRECTING CLERK OF
11          v.                               COURT TO ENTER JUDGMENT IN FAVOR
                                             OF RESPONDENT, AND DECLINING TO
12                                           ISSUE CERTIFICATE OF APPEALABILITY
   R. GROUNDS,
13                                           [Doc. 1]
                        Respondent.
14  _____/

15
16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus
17  pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to
    the jurisdiction of the United States Magistrate Judge.  Local Rule 305(b).
18
                                      BACKGROUND[1]
19
20          Following a jury trial, Petitioner was convicted of second degree robbery in violation of
21  California Penal Code[2] section 211 and the special allegation that he personally used a firearm
    during the commission of the robbery within the meaning of section 12022.53(b) was found true.
22
23  On July 23, 2007, Petitioner was sentenced to an aggregate term of 13 years, computed as
24  follows: the middle term of three years for the robbery conviction plus an additional ten years for
    the firearm enhancement.
25

26  _____

27      [1] This information is derived from the state court documents lodged by Respondent on July 19, 2010, which
    are not subject to dispute.
28
        [2] All further statutory references are to the California Penal Code unless otherwise indicated.

1    Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth

2  Appellate District.  On January 15, 2009, the Court of Appeal affirmed the judgment.

3    On February 24, 2009, Petitioner filed a petition for review in the California Supreme

4  Court.  The petition was denied on April 1, 2009.

5    Petitioner filed the instant petition for writ of habeas corpus on March 19, 2010.

6  Respondent filed an answer on July 19, 2010.  Petitioner did not file a traverse.

7                        STATEMENT OF FACTS[3]

8    On November 19, 2006, at 6:30 a.m., Maria Pacheco arrived for work at
   La Estrella Bakery in the City of Fresno.  When she parked her car in the parking
9  area adjacent to the bakery, she noticed a man was seated in a blue car that
   appeared to be a Taurus.  As Ms. Pacheco walked toward the bakery, the man
10 drove the blue car in front of her path, pulled out a gun and told her two or three
   times in Spanish, "'give me your fuckin' purse.'"  Ms. Pacheco handed over her
11 black purse and the robber drove away.  Ms. Pacheco recalled that the man was in
   his early twenties, Hispanic, wore a hooded sweatshirt and a baseball hat, and had
12 "a very penetrating gaze."  At trial, she identified [Petitioner] as the robber and
   said she was "sure it [was] him."
13
14   Leonardo Portillo lived in an apartment complex that was only four or five
   blocks from the bakery.  At 6:30 or 7:00 a.m. on the morning of the robbery, Mr.
15 Portillo noticed that a blue Taurus had parked in behind his own vehicle in an alley
   outside the apartment.  Mr. Portillo saw a Hispanic male, approximately 25-30
16 years old, wearing a black jacket with a hood pulled over his head, exit the blue
   Taurus carrying what appeared to be a black purse.  Mr. Portillo wrote down the
17 license plate number of the vehicle and had his wife call the police to report what
   he had seen.  However, before the police arrived, a different man and a woman
18 walked into the alley.  The woman got into the Taurus and drove away.

19   On November 28, 2006, Fresno Police Officer Kurt Smith pulled over a
   blue Taurus.  The driver of the vehicle was Saul Rojas.  Officer Smith ran a
20 routine check and learned that the Taurus was a suspect vehicle in a recent
   robbery.  Officer Smith observed that the ignition for the Taurus had been
21 "punched out" and he found a black purse in the trunk.  Ms. Pacheco was later
   shown the black purse, but she said it was not hers.  When investigating officers
22 had Ms. Pacheco view a photo lineup that included a picture of Saul Rojas, she
   was unable to identify anyone in the photographs.

23   On December 18, 2006, around 4:40 a.m., Officer Matt Wilkerson of the
   Fullerton Police Department pulled over a Plymouth Voyager van for a traffic
24 stop.  Juan Mendoza was the driver of the van; [Petitioner] as the passenger.
   Because the van's steering column had been tampered with, Officer Wilkerson
25 believed that the vehicle had been stolen.  A search of the vehicle revealed a Bank
   of America checkbook belonging to Raquel Reyes of Fresno.  During a search at
26 the police station, a Wells Fargo Bank credit card belonging to Ms. Pacheco was
   found in Mr. Mendoza's pocket.

27

28
   ─────────────
   [3] The statement of facts is taken directly from the Court of Appeal's January 15, 2009 decision.

                                    2

1    On January 17, 2007, Detective David Fries of the Fresno Police
Department showed Ms. Pacheco two more photo lineups, one that included a
2    picture of Juan Mendoza and one that included a picture of [Petitioner]. Ms.
Pacheco pointed to [Petitioner]'s picture and indicated that he was the person who
3    had robbed her.

4    Subsequently, Detective Fries interviewed [Petitioner] about the
November 19, 2006 robbery. [Petitioner] admitted he was familiar with the blue
5    Taurus, but said it belonged to his friend Mr. Rojas's mother and he denied every
driving it. When Detective Fries stated that he was sure [Petitioner] was the
6    robber, [Petitioner] hung his head, nodded up and down and said okay. When
Detective Fries told him, for the purpose of seeing his response, that the victim
7    claimed he dragged her from the car, he immediately sat up and said that nothing
like that ever happened and "[t]hat lady must be crazy."

8
In [Petitioner]'s defense, his wife testified that [Petitioner] has always had
9    a goatee and a mustache. [Petitioner]'s former coworker, Jose Cruz, testified that
he had seen Rojas give [Petitioner] a ride to work while driving a blue car.

10

11   (Lodged Doc. 4 at 2-4.)

12                                  DISCUSSION

13   A.    Jurisdiction

14        Relief by way of a petition for writ of habeas corpus extends to a person in custody

15   pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

16   or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

17   529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered

18   violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises

19   out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.

20   28 U.S.C. § 2254(a); 2241(d).

21        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

22   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

23   enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

24   F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

25   Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.

26   1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

27   (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant

28   petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.      Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (9th Cir. 2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to

4

determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

C.    Admission of Uncharged Crime

Petitioner contends the trial court erred by allowing the prosecution to introduce evidence of an uncharged crime-possession of stolen property-to prove a common design or plan to steal a certain type of property (i.e. personal checks and credit cards).

Petitioner filed several in limine motions, including a challenge to exclude any evidence of the burglary tools and other items (i.e., credit/debit cards, check books, and cell phones), with the exception of Pacheco's credit card that was found in the van by Fullerton Officers during the December 18, 2006, vehicle stop.

The trial court heard argument by the parties and initially indicated that it was granting Petitioner's motion to exclude the above mentioned evidence, stating the following:

> [A] common plan must relate back to the crime that you have him charged with, and the crime that you have him charged with is a 211 [robbery]. If he were charged with a 496 [receiving stolen property], then I would see that this other evidence would be more than relevant and very probative and that it would not be prejudicial. It would just simply be evidence of possessing stolen property and common plan, intent, lack of mistake. There are all kinds of ways that it would - - that it would clearly be admissible in my estimation. But, again, what we have to focus on here is that all of these theories of admissibility have to relate back to the 211, and I just can't make that jump.

(RT 71-72.)

The prosecution responded by clarifying that its theory was that the common design or plan analysis was satisfied if the evidence reveals "a common plan or design to take certain types of property." (RT 75-79, 82.) The court then agreed that the evidence of similar property (i.e., credit cards, debit cards, and check books) found in the van during the December 18, 2006, vehicle stop was admissible. (RT 89.) However, the court substantially limited its ruling by requiring the prosecution to establish a proper foundation that the object had, in fact, been stolen. As a consequence, the prosecution only introduced the checks that had been stolen from Reyes to establish a common design or plan.

Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 112 S.Ct. at 477; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), cert. denied, 478 U.S. 1021 (1985).  Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), cert. denied, 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990).

The California Court of Appeal found the claim to be without merit and held as follows:

We believe the evidence of uncharged misconduct was correctly admitted by the trial court for the purpose of showing a common design or plan to steal certain types of property - - specifically, checks and credit cards.  Ms. Reyes's checks, which were found in the van along with Ms. Pacheco's credit card (in the driver's pocket), manifested this pattern and allowed a reasonable inference that a distinct plan or design was involved.  Just as one thief might repeatedly focus his time and effort on stealing jewels, another might consistently plan to filch credit cards and checkbooks, as was apparently the case here.  "[E]vidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts.  Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense. [Citation.]" [Citation] Because the evidence was adequate to meet this standard, the trial court did not abuse its discretion.

Further, we reject [Petitioner's] contention that the evidence was actually introduced to show "identity."  That was simply not the case. [Petitioner's] identity was convincingly established by Ms. Pacheco's testimony, and the evidence of other crimes was clearly introduced for the limited purpose of establishing a common plan or design.

(Lodged Doc. 4 at 5-6.)

Despite the appellate court's holding, Petitioner continues to argue that the uncharged evidence improperly related to the issue of "identity."  The Court does not agree.  The trial court properly admitted the fact that Petitioner was found to be in constructive possession of checks during the vehicle stop because they were similar to the items taken during the commitment offense and related to a plan or design to steal credit cards and/or checkbooks.  The evidence was therefore probative of whether the elements of robbery were established in the commitment

offense.  Therefore, such evidence was relevant and did not violate Petitioner's due process rights.

D.      Instructional Error-CALCRIM No. 375

Petitioner contends that the jury instruction relating to the uncharged misconduct, CALCRIM No. 375, "effectively lowered the prosecution's standard of proof."

The California Court of Appeal found no error and held as follows:

> The trial court instructed the jury with CALCRIM No. 375, which explained how the jury should analyze the evidence of uncharged misconduct. The gist of [Petitioner's] argument is that the language of CALCRIM No. 375 "effectively lowered the prosecution's standard of proof."  We disagree.  The court's instruction not only limited the purposes for which the evidence could be considered, but clearly provided the following explanation to the jury regarding burden of proof: "If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of robbery.  The People must still prove each element of the charge beyond a reasonable doubt."  Thus, the effect of CALCRIM No. 375 was merely to permit the jury to draw the inference that [Petitioner] had a common plan or design, assuming the uncharged offense was established by a preponderance of the evidence.  The jury would still have to determine whether all the elements of the charge were proven beyond a reasonable doubt, as the instruction plainly stated.

(Lodged Doc. 4 at 6-7.)

As a preliminary matter, the Court notes that an allegation that a jury instruction is incorrect under state law does not form a basis for federal habeas corpus relief.  Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."). In reviewing an ambiguous instruction, the inquiry is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Id. at 72, *quoting* Boyde v. California, 494 U.S. 370, 380 (1990). A jury instruction violates the Constitution if its use "so infused the trial with unfairness as to deny due process of law." Lisenba v. California, 314 U.S. 219, 228 (1941). The instruction "must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 67, *citing* Cupp v. Naughton, 414 U.S. 141, 147 (1973). In the event constitutional error occurred, the court must apply the harmless error analysis mandated by Brecht v. Abrahamson, 507 U.S. 619 (1993). In Brecht, the Supreme Court held that habeas relief based on

1 trial error may only be granted when that error "'had substantial and injurious effect or influence

2 in determining the jury's verdict.'" 507 U.S. at 637, *quoting* Kotteakos v. United States, 328 U.S.

3 750, 776 (1946).

4       First, this Court is bound to the state court's holding that the instruction did not lower the

5 prosecution's burden of proof.  Clemons v. Mississippi, 494 U.S. 738, 739-40 (1990) (A federal

6 court has no basis for disputing a state's interpretation of its own law.)  Second, the instruction

7 expressly prohibited the jury from considering the uncharged misconduct "for any other purpose

8 except for the limited purpose of determining whether the defendant had a plan or scheme to

9 commit the offenses alleged in this case."  Contrary to Petitioner's claim, CALCRIM 220 does

10 not tell the jury that it may not consider a perceived lack of evidence when determining if

11 reasonable doubt exists.  The instruction only advises the jury that the People cannot meet its

12 burden based on evidence not presented during trial.  The People's burden of reasonable doubt

13 was thoroughly defined, including CALCRIM 315, 355, 359, and 376, which advised the jury of

14 the People's burden of proof.  (CT 86, 90, 93, 98.)  After considering the record as a whole, it is

15 clear Petitioner has not shown there is a reasonable likelihood the instruction infected the entire

16 trial that his resulting conviction violated due process.

17 E.       Instructional Error-CALCRIM 220

18       Petitioner contends that the definition of "reasonable doubt" as set forth in CALCRIM

19 No. 220 was incorrect rising to a due process violation.  More specifically, he claims the

20 instruction prevented the jury from considering the alleged lack of evidence in determining

21 whether a reasonable doubt existed to prove he was the person who committed the offense.

22       As read to the jury, CALCRIM 220 provided:

23       The fact that a criminal charge has been filed against [Petitioner] is not
evidence that the charge is true.  You must not be biased against [Petitioner] just
24 because he has been arrested, charged with a crime, or brought to trial.  The
defendant in a criminal case is presumed to be innocent.  This presumption
25 requires that the People prove a defendant guilty beyond a reasonable doubt.
Whenever I tell you the People must prove something, I mean, they must prove it
26 beyond a reasonable doubt unless I specifically tell you otherwise.

27       Proof beyond a reasonable doubt is proof that leaves you with an abiding
conviction that the charge is true.  The evidence need not eliminate all possible
28 doubt because everything in life is open to some possible or imaginary doubt.

8

In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves [Petitioner] guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

(CT 75.)

The California Court of Appeal denied the claim and held as follows:

[Petitioner] contends that the definition of reasonable doubt in CALCRIM No. 220, when considered in conjunction with CALCRIM 222, [n. 3]

[n.3: Pursuant to CALCRIM No. 222, the jury was instructed to "use only the evidence that was presented in the courtroom."]

prevented the jury from considering a lack of evidence in deciding whether reasonable doubt existed, thereby denying [Petitioner] his federal due process rights. [Petitioner's] contention is without merit.  This same challenge to CALCRIM No. 220 has been completely rejected in the numerous cases that have considered it. [Citations.] We fully agree with the analyses of these cases and, for the sake of judicial efficiency, adopt and incorporate them here. [Petitioner's] challenge to CALCRIM No. 220 fails.

(Lodged Doc. 4 at 8.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  However, the United States Supreme Court has held that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." Victor v. Nebraska, 511 U.S. 1, 5 (1994).

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Petitioner appears to object to the sentence in CALCRIM No. 220 that instructs the jury that it must consider only the evidence presented at trial in determining whether the People have met their burden of proof.  This instruction advises the jury that People may not meet their burden of proof based on evidence that was not offered at trial.  The instruction does not tell the jury that it may not consider any perceived lack of evidence in determining whether a reasonable doubt exists as to the defendant's

1    guilt.  Moreover, during closing argument defense counsel emphasized that such lack of evidence

2    raised a reasonable doubt further informing the jury that they could consider that in determining

3    guilt. In light of such circumstances, there is no showing that the instruction so infected the entire

4    trial that his resulting conviction violated due process.

5    F.    Certificate of Appealability

6          A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

7    district court's denial of his petition, and an appeal is only allowed in certain circumstances.

8    Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining

9    whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

10          (a) In a habeas corpus proceeding or a proceeding under section 2255 before a

11          district judge, the final order shall be subject to review, on appeal, by the court
            of appeals for the circuit in which the proceeding is held.

12
            (b) There shall be no right of appeal from a final order in a proceeding to test the
13          validity of a warrant to remove to another district or place for commitment or trial
            a person charged with a criminal offense against the United States, or to test the
14          validity of such person's detention pending removal proceedings.

15          (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an
                   appeal may not be taken to the court of appeals from–
16
                       (A) the final order in a habeas corpus proceeding in which the
17                     detention complained of arises out of process issued by a State
                       court; or
18
                       (B) the final order in a proceeding under section 2255.
19
            (2) A certificate of appealability may issue under paragraph (1) only if the
20          applicant has made a substantial showing of the denial of a constitutional right.

21          (3) The certificate of appealability under paragraph (1) shall indicate which
            specific issue or issues satisfy the showing required by paragraph (2).
22

23          If a court denies a petitioner's petition, the court may only issue a certificate of

24   appealability "if jurists of reason could disagree with the district court's resolution of his

25   constitutional claims or that jurists could conclude the issues presented are adequate to deserve

26   encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S.

27   473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must

28   demonstrate "something more than the absence of frivolity or the existence of mere good faith on

his . . . part." <u>Miller-El</u>, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.     The instant petition for writ of habeas corpus is DENIED;

2.     The Clerk of Court is directed to enter judgment in favor of Respondent; and

3.     The Court declines to issue a certificate of appealability.


IT IS SO ORDERED.

**Dated:**     **October 5, 2010**                    _____ **/s/ Dennis L. Beck** _____
                                                      UNITED STATES MAGISTRATE JUDGE